# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHERYL WHEELER,<br><br>         Plaintiff,<br> v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION and USAA CASUALTY INSURANCE COMPANY,<br><br>         Defendants. | Case No. 3:11-cv-00018-SLG |

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

Before the Court at Docket 64 is Plaintiff Sheryl Wheeler's Motion for Class Certification, which is opposed by Defendant United Services Automobile Association ("USAA") and USAA Casualty Insurance Company ("USAA CIC") (collectively, "USAA Defendants").[1] For the reasons set forth below, the motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

After an automobile accident, Ms. Wheeler settled her claims against a driver insured by the USAA Defendants. Ms. Wheeler asserts that Alaska law required a higher payment of attorney's fees than was delivered in the settlement. Ms. Wheeler seeks to recover on her individual claims and also seeks to represent a class of individuals who entered into similar settlement agreements that involved USAA insurance coverage.

The allegations in the Second Amended Complaint ("SAC") that form the basis of Ms. Wheeler's claims are as follows:

---

[1] Former Defendant Sharon Sadlon also filed an opposition to the motion. However, all claims against Ms. Sadlon have since been dismissed with prejudice. Docket 105 (Order Approving Stipulation for Dismissal with Prejudice).

On January 3, 2009, Ms. Wheeler was in an automobile accident with Sharon Sadlon.[2] Ms. Wheeler and Ms. Sadlon are both Alaska residents and the accident appears to have taken place in Alaska.[3] Ms. Sadlon had an automobile insurance policy with USAA CIC ("Policy") that included $50,000 bodily injury coverage.[4] Pursuant to its authority under the Policy to defend and settle claims, USAA CIC initiated settlement negotiations with Ms. Wheeler's attorney to resolve claims arising from the automobile accident.[5] The SAC alleges that Ms. Wheeler "signed a standard USAA form release, releasing Sadlon from all liability for causing the accident" and settled for an "amount that was represented to be all of the USAA insurance proceeds available to protect Sadlon," i.e., the policy limit.[6]

Ms. Wheeler received the $50,000 policy limit, with $1,519.86 in interest, plus attorney's fees of $7,651.99, for a total of $59,171.85.[7] The fee award was calculated using Alaska Rule of Civil Procedure 82, which provides that "the prevailing party in a civil case shall be awarded attorney's fees calculated under" the fee schedule set forth

---

[2] Docket 35 at 2-3 ¶¶ 7-8.

[3] Docket 35 at 2 ¶¶ 1, 8.

[4] Docket 35 at 2-3 ¶¶ 9-10.

[5] Docket 35 at ¶¶ 11-12.

[6] Docket 35 at 3 ¶¶ 13-15.

[7] Docket 35 at 4 ¶ 17.

in the rule.[8] The fee schedule fixes the fee award at a percentage of the money judgment obtained.[9]

Ms. Wheeler's fee award was calculated as a percentage of the settlement amount, a method known as "limited Rule 82 fees."[10] The SAC asserts that the fee award should have been calculated as a percentage of Ms. Wheeler's total damages, a method known as "unlimited Rule 82 fees."[11]

The SAC states that although an insurer may lawfully limit its liability under Rule 82, it may only do so by including "an approved notice in a form promulgated by the Division of Insurance as part of the policy" and that failure to include such a notice renders the limitation ineffective.[12] The SAC asserts that "all of" the USAA Defendants' insurance policies include the necessary form, but specifically state that the form is not part of the policy.[13] Thus, according to the SAC, the attempted limitation of Rule 82 fees in the USAA Defendants' policies is ineffective and "Sadlon's Policy actually provided unlimited Rule 82 attorney fee coverage."[14]

---

[8] Alaska R. Civ. P. 82(a).

[9] Rule 82 establishes different percentages depending on the amount of the recovery and whether the case was contested with trial, contested without trial, or non-contested. Alaska R. Civ. P. 82(b)(1).

[10] Docket 35 at 4 ¶ 18.

[11] Docket 35 at 3-4 ¶¶ 16, 18, 22.

[12] Docket 35 at 5 ¶¶ 27-28.

[13] Docket 35 at 6 ¶ 31.

[14] Docket 35 at 7 ¶ 36; Docket 35 at 4 ¶ 20.

Ms. Wheeler initiated this action in Alaska Superior Court on June 10, 2010 and filed a First Amended Complaint on January 14, 2011. The USAA Defendants removed the action to federal court on the basis of diversity on February 14, 2011. Pursuant to a stipulation by the parties, the Court granted Ms. Wheeler leave to file a Second Amended Complaint on February 27, 2012.[15]

Ms. Wheeler seeks to represent a class of plaintiffs that she alleges have suffered a similar injury. The SAC defines the proposed class as follows:

> [A] class of persons: A) Injured in Alaska since 2001 by persons or entities insured by the USAA Group for legal liabilities, and B) To whom the USAA Group tendered an amount in settlement that it represented was its full policy limits, and C) To whom the USAA Group tendered an amount in settlement that was calculated as though it had complied with the requirements of Alaska law for limiting its Rule 82 attorney fee coverage, and D) Who signed releases in exchange for payment of funds not including unlimited Rule 82 attorney fees.[16]

Ms. Wheeler has indicated that she expects the class size to exceed 136 members.[17]

The SAC asserts three individual claims for relief on behalf of Ms. Wheeler: (1) Reformation of Settlement Agreement, (2) Misrepresentation, and (3) Rescission for Mutual Mistake.[18] It asserts the following "questions of law and fact common to the class":

    a. Whether the USAA Group's standard liability insurance policies are in compliance with Alaska law regarding limited Rule 82 fees.

---

[15] Dockets 39, 35.

[16] Docket 35 at 11 ¶ 59.

[17] Docket 65 at 34 ("[T]here are more than 136 people in the proposed class as of January 14, 2011. . . This number can only have grown over the intervening period.").

[18] Docket 35 at 8-10.

  b. Whether people entitled to be paid the full policy limits by USAA have been harmed by the USAA Group's failure to pay the actual, unlimited Rule 82 fees.

  c. Whether the class members have a right to reformation, rescission, or damages due to the USAA Group's violations of Alaska law regarding limited Rule 82 fees.[19]

In her reply supporting the Motion for Class Certification, Ms. Wheeler clarifies that "the class claim is solely that USAA owes the class members unlimited rather than limited Rule 82 [attorney's fees] under the policies it wrote for Alaskan Auto Insurance[,]" and that the class claims do not include a claim for rescission.[20]

  The SAC seeks several remedies, presented as alternatives: (1) reformation of Ms. Wheeler's settlement agreement and damages from USAA equaling "the difference between the actual policy limits and the amount Wheeler has already been paid"; *or* (2) an order requiring the USAA Defendants to pay Ms. Wheeler damages from "USAA CIC's misrepresentation of the amount of insurance available under Sadlon's USAA Group policy"; *or* (3) rescinding Ms. Wheeler's settlement agreement, *and/or* (4) "[a]warding each class member the difference between the USAA Group's actual policy limits and the amount the class member has already been paid or, at the class member's option, voiding each class member's release taken by the USAA Group[.]"[21]

---

[19] Docket 35 at 11-12 ¶ 62.

[20] Docket 85 at 27-28.

[21] Docket 35 at 14.

Ms. Wheeler filed the present Motion for Class Certification on March 8, 2013.[22] It seeks certification of the class under Federal Rule of Civil Procedure 23(b)(3). Former Defendant Sharon Sadlon opposed on April 8, 2013,[23] as did the USAA Defendants.[24] Ms. Wheeler filed a combined reply to the two opposition briefs on April 29, 2013.[25] After receiving leave from the Court to do so, the USAA Defendants filed an additional declaration and a surreply to address new arguments in the reply and Ms. Wheeler filed a responsive brief on June 17, 2013.[26] Oral argument was held in Anchorage on June 13, 2013. On July 11, 2013, the Court approved a stipulation filed by Ms. Wheeler and Ms. Sadlon dismissing all claims against Ms. Sadlon with prejudice.[27]

## DISCUSSION

**I. Jurisdiction.**

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

**II. Class Certification Requirements.**

Federal Rule of Civil Procedure 23(a) sets forth the prerequisites for a class action as follows:

---

[22] Docket 64. A redacted version was later filed at Docket 81.

[23] Docket 70; *see supra* n.1.

[24] Docket 72.

[25] Docket 85; Docket 86 (redacted version).

[26] Docket 101; Docket 99.

[27] Docket 105.

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

As the party seeking class certification, Ms. Wheeler bears the burden of affirmatively demonstrating that she has met the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).[28] Here, Ms. Wheeler seeks to certify the class in this action under Rule 23(b)(3).[29] That provision requires the Court to find:

> that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.[30]

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."[31]

---

[28] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) *opinion minorly amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

[29] Docket 65 at 30.

[30] Fed. R. Civ. P. 23(b)(3).

## III. Analysis.

Ms. Wheeler asserts in her motion that the proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3).[32] The parties have presented and briefed extensive arguments and evidence on each of the requirements for class certification under both provisions of the Rule, all of which the Court has reviewed and considered. However, as explained below, the Court has determined that the class does not satisfy Rule 23(b)(3); therefore, it will not address the parties' arguments under Rule 23(a).[33] Moreover, the Court focuses its discussion on the issue of individualized damages, as it has determined this issue alone defeats the Rule's predominance requirement and thus decisively bars class certification on the current record.

Ms. Wheeler acknowledges that the damages due each class member would be an "individualized issue[,]" but maintains that "[t]he rule within the Ninth Circuit since 1975 has been that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'"[34]

The USAA Defendants assert that the Supreme Court's recent decision in *Comcast Corp. v. Behrend* "makes [it] clear [that] individualized damages considerations *do* defeat predominance[.]"[35] Ms. Wheeler disagrees, contending that "*Comcast* is not a sweeping repeal of 40-years of case law holding that the individual

---

[31] *Mazza*, 666 F.3d at 588 (quoting *Zinser*, 253 F.3d at 1186).

[32] Ms. Wheeler has not sought alternative certification under Rule 23(b)(1) or Rule 23(b)(2).

[33] *See Zinser*, 253 F.3d at 1186 n.3 ("Because we affirm the district court's denial of class certification pursuant to Rule 23(b), we do not address Zinser's Rule 23(a) arguments.").

[34] Docket 65 at 40, 45 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

[35] Docket 72 at 30 (citing 133 S.Ct. 1426 (2013)).

issues regarding amount of damages do not defeat predominance."[36] Ms. Wheeler cites to opinions from the Ninth and Seventh Circuits that she asserts supports her position that the calculation of individual damages does not defeat class certification.[37] However, each of the cases cited by Ms. Wheeler predates the Supreme Court's decision in *Comcast*.

In *Comcast*, the Supreme Court reviewed the district court's certification of a class under Rule 23(b)(3). The plaintiffs brought suit against Comcast, a cable company, on behalf of a proposed class of current and former Comcast subscribers that exceeded 2 million individuals. The suit alleged that Comcast had engaged in practices that violated antitrust laws. The plaintiffs proposed four theories of liability, only one of which was accepted by the district court. To establish damages, the plaintiffs submitted a model created by one of their experts, which compared actual cable prices with "hypothetical prices that would have prevailed but for petitioners' allegedly anticompetitive activities" and calculated a total amount of damages for the entire class.[38] Although the model "did not isolate damages resulting from any one theory of antitrust impact[,]" the district court found that damages could be calculated on a classwide basis and certified the class under Rule 23(b)(3).[39] Comcast appealed, and the Third Circuit affirmed the class certification.

---

[36] Docket 85 at 29 (capitalization modified).

[37] Docket 85 at 29-30 (citing *Yokoyama v. Midland Life Ins. Co.*, 594 F.3d 1087, 1093-94 (9th Cir. 2010); *Messner v. Northshore U. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)).

[38] 133 S.Ct. at 1431.

[39] *Id.*

The Supreme Court granted certiorari and reversed. In a 5-4 decision authored by Justice Scalia, it explained that "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation."[40] The Supreme Court held that because the plaintiffs' proposed damages model did not "measure only those damages attributable" to the plaintiffs' viable theory of liability, the model fell "far short of establishing that damages are capable of measurement on a classwide basis."[41]

*Comcast* thus holds that where a proposed Rule 23(b)(3) class involves individualized damages, the plaintiff must provide the district court with a method that is capable of measuring damages on a classwide basis. Without such a method, *Comcast* instructs that the predominance requirement of Rule 23(b)(3) cannot be met, as "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."[42]

The dissent in *Comcast* asserts that "the opinion breaks no new ground on the standard for certifying a class action under Federal Rule of Civil Procedure 23(b)(3)."[43] It also cautions that "the decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable 'on a

---

[40] *Id.* at 1433 (citations and internal quotation marks omitted).

[41] *Id.*

[42] *Id.*

[43] *Id.* at 1436 (Ginsburg and Breyer, dissenting).

3:11-cv-00018-SLG, *Wheeler v. USAA et al.*
Order Denying Motion for Class Certification
Page 10 of 13

classwide basis.'"[44] The dissent adds that it is nearly universally recognized "that individual damages calculations do not preclude class certification under Rule 23(b)(3)[.]"[45] It cites to *Newberg on Class Actions* in support of this statement.[46] However, that treatise continues its discussion beyond the line cited by the dissent to explain that

> Occasionally, a court will rule that where damages are not susceptible to formulaic calculation, individual damage evaluations will predominate over common liability issues. This is generally the rule with regard to the significant personal injury damages, and the predominance requirement therefore precludes certification in most mass tort personal injury cases[.][47]

Thus, even under the authority cited by the dissent in *Comcast*, certain categories of cases, such as those involving "significant personal injury damages," are inappropriate for class actions because of the extent of the individualized damage evaluations necessary, which prevents them from meeting the predominance requirement of Rule 23(b)(3).

Here, the necessary damage calculations would involve separate and "significant personal injury damages" evaluations for each of the proposed 136-plus class members. Each proposed class member allegedly received attorney's fees that were calculated as a percentage of the policy limit. Ms. Wheeler asserts that each member

---

[44] *Id.* (internal quotation marks omitted).

[45] *Id.* at 1437 (Ginsburg and Breyer, dissenting).

[46] *Id.* (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:54, p. 205 (5th ed. 2012) ("ordinarily, 'individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)'")).

[47] 2 *Newberg on Class Actions* § 4:54.

3:11-cv-00018-SLG, *Wheeler v. USAA et al.*
Order Denying Motion for Class Certification
Page 11 of 13

should have received attorney's fees calculated as a percentage of the amount of his or her actual damages.  The amount of damages allegedly due to each class member would therefore be the difference between the fee award actually received (percentage of policy limit) and the fee award that was supposed to have been received (percentage of actual damages).  The fee award actually received is a known number.  But each proposed class member was injured in a separate accident and suffered unique injuries; thus, the amount of damages allegedly due to each class member would differ significantly based on the specific nature of each proposed member's injury.

    Ms. Wheeler has not provided the Court with any common method of determining the amount of each proposed class member's actual damages, and thus has not demonstrated that damages are capable of measurement on a classwide basis.  That she has not done so is not surprising, as the Court cannot conceive of a common method that could be applied in these circumstances.  Instead, to calculate damages, the Court would be required—for each of the 136-plus proposed class members—to conduct a separate evidentiary proceeding for that class member to determine the cause(s) of each member's accident and the amount of damages suffered by each of them.  The individual questions of fact implicated in the determination of damages for the proposed class would "inevitably overwhelm" the common questions of law and fact asserted in the SAC.[48]  Accordingly, the Court finds that Ms. Wheeler has not

---

[48] The SAC asserts three common questions of law and fact.  The primary question, which inquires whether the policies at issue are in compliance with Alaska law, is a pure question of law.  The second and third questions go to liability, and inquire whether class members have been harmed by the policies and whether they have a right to damages.  The Court's discussion has focused on the necessity of individualized damages calculations in this action.  However, the USAA Defendants have also raised several arguments regarding the potentiality for individualized liability determinations as well.  For example, the USAA Defendants point out that

demonstrated that the proposed class meets the predominance requirement of Rule 23(b)(3).

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's Motion for Class Certification at Docket 64 is DENIED.

2. The class action claims in the Second Amended Complaint are DISMISSED.

3. This action shall proceed with respect to Plaintiff's individual claims only.

DATED at Anchorage, Alaska this 27th day of August, 2013.

*/s/ Sharon L. Gleason*
United States District Judge

---

only class members whose actual injuries exceeded, rather than merely equaled, the policy limit would be able to assert a claim, and that the Court would need to resolve these individualized factual issues to determine liability. Docket 72 at 27; *cf.* Docket 72 at 19 (citing expert report indicating that "at least three of the [proposed members'] compensable damages should be valued at well below the insured's bodily injury limits."). They also note that the releases signed by class members all specify a sum certain, not the "policy limit," as the settlement amount, which would require a factual inquiry into the intent of each party upon entering the release in order to determine liability. Docket 72 at 14-15; Docket 101 at 9-10; *see also* Docket 101-1 at 2 (Wheeler-Sadlon Release containing sum certain settlement amount); Docket 64-24 at 5 (USAA Defendants' discovery response admitting that the Wheeler-Sadlon settlement amount "was predicated on what the parties to the Release acknowledged to be the 'policy limits' of Sadlon's liability coverage."). The USAA Defendants (and Ms. Sadlon, prior to her dismissal from this action) also raised the potential of joining as necessary parties all the USAA insureds with whom the proposed class members entered releases, which would drastically reduce the efficiency and superiority of the class action. Docket 72 at 41; Docket 70 at 2. Although the Court has not addressed these arguments and does not base its ruling on them, they are indicative of additional concerns.